## No. 25037

**The People of the State of Colorado v. Sherron F. Spencer, Glen Keith Spencer, and Olen A. Spencer**

(512 P.2d 260)

Decided July 2, 1973.                    Rehearing denied August 7, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Jack E. Hanthorn, Assistant, for plaintiff-appellee.

Haas and Watts, William L. Rice, for defendants-appellants Glen Keith Spencer and Olen A. Spencer.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant Sherron F. Spencer.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendants were convicted of perjury, 1967 Perm. Supp., C.R.S. 1963, 40-7-1, and conspiracy to commit perjury, C.R.S. 1963, 40-7-35. On appeal, three of the issues which have been raised require discussion in depth.

This case is an outgrowth of a continuing disagreement between the Spencers and the Baders over disputed water rights. The case which is before us came about when Sherron Spencer charged his neighbor, Clay Bader, with assault with a deadly weapon. He claimed that on June 19, 1968, while he was operating a backhoe, Clay Bader fired a rifle at him from his pickup truck. Keith and Olen Spencer backed up the story. Sherron Spencer reported the matter to the district attorney and signed a criminal complaint which the district attorney prepared. After testimony was presented at the preliminary hearing on the criminal complaint, Bader's attorney requested and was granted a continuance. At that point, the Spencers demanded a grand jury investigation.

Prior to the time that the preliminary hearing was held, an investigator for the district attorney made photographs and conducted certain tests which proved to his satisfaction that the alleged assault could not have occurred as the Spencers said it had.

When the grand jury was convened, the Spencers appeared

as witnesses but were not advised of their rights against self-incrimination. U.S. Const. amend. V; Colo. Const. art. II, § 18. In their appearance before the grand jury, the Spencers offered the same version of the facts which they had earlier reported to the district attorney and testified to at the preliminary hearing. The grand jury did not believe the story and charged the Spencers with conspiracy to falsely and maliciously charge Clay Bader with assault with a deadly weapon, C.R.S. 1963, 40-7-35, perjury, and conspiracy to commit perjury.

Prior to trial, motions were filed, one of which was to suppress the defendants' testimony before the grand jury. The motion to suppress was denied, and after an extended trial on the charges of perjury and conspiracy to commit perjury, the jury convicted the defendants of both charges. The defendants were sentenced to the penitentiary.

Errors which occurred in the course of the trial compel us to order that the defendants be granted a new trial.

I.

■ The Spencers claim that the trial court erred in permitting their grand jury testimony to be admitted as evidence in their trial. We do not agree. Even though the grand jury investigation and the indictment of the defendants involved procedures which we cannot approve, the defendants are not entitled to have their alleged perjured testimony before the grand jury suppressed.

The Spencers caused the grand jury to be called and appeared before the grand jury at their own request. Their demand, however, does not license an abuse of the grand jury process. The charges which were made by the grand jury centered on the charges which the defendants leveled against their neighbor, Clay Bader.

The district attorney investigated the complaint and formed a strong suspicion that the Spencers were lying. After a full investigation, the district attorney concluded that the shooting could not have occurred in the manner related by the Spencers. He also knew of alibi evidence which would exonerate Clay Bader. He completed his investigation long

before the grand jury was convened.

It has long been the law in Colorado that a defendant cannot be called before a grand jury which is investigating the suspected offenses unless the putative or focused-on defendant is fully warned of his or her, privilege against self-incrimination. *People v. Clifford,* 105 Colo. 316, 98 P.2d 272 (1940). This principle remains true, of course, even though the focused-on defendant is not yet formally charged. Admittedly, the Spencers were not given any warning when they appeared before the grand jury. The required warning, however, relates to admissions concerning past acts, and its absence does not grant witnesses the right to commit perjury before the grand jury. *See United States v. DiGiovanni,* 397 F.2d 409 (7th Cir. 1968).

The Fifth Amendment grants a witness the right to remain silent and not incriminate himself. However, the constitutional protection "extends only to past acts, not to those that are or may be committed in the future." *United States v. Ponti,* 257 F.Supp. 925 (E.D. Pa. 1966). When the Spencers testified before the grand jury, they did not incriminate themselves in regard to a past offense but committed the crime of perjury by their statement relating to the alleged assault. They were indicted for their alleged false testimony and not for previous conduct which they admitted by their testimony before the grand jury. *United States v. Ponti, supra; United States v. Provinzano,* 326 F.Supp. 1066 (E.D. Wis. 1967).

## II.

The Spencers also contend that the trial court erred in failing to dismiss the indictment because their trial was not commenced within one year after the trial court obtained jurisdiction over them. Colo. R. Crim. P. 48(b). The defendants contend that the one-year limitation period ended on October 25, 1969, and that the trial was not commenced until July 20, 1970. The record answers the defendants' claim that they were denied a speedy trial. The defendants' own actions caused the delay. Their motion to vacate the original trial date, coupled with a motion for a continuance,

which was granted, robbed the one-year rule of its efficacy. Under Colo. R. Crim. P. 48(b), if the delay of more than one year is occasioned by the defendant, then dismissal is not required. *Medina v. People,* 154 Colo. 4, 387 P.2d 733 (1963); *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965) (interpreting the precursor statute, C.R.S. 1953, 39-7-12).

▮ Neither, in our judgment, were the Spencers denied their constitutional right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16. The Supreme Court of the United States has recently held that an *ad hoc* balancing test is to be used to determine whether the right to a speedy trial has been denied. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The test includes four factors: the length of the delay, the reason for the delay, the defendant's assertion or demand for a speedy trial, and the prejudice to the defendant. *See* Erickson, *The Right to a Speedy Trial: Standards for Its Implementation,* 10 Houston L. Rev. 237 (1973).

▮ The record reflects that the defendants made no demand for a speedy trial until fourteen months expired and showed no prejudice as a result of the delay. The record also reflects that the delay occurred to permit the defendants to obtain expert testimony and prepare for trial. Moreover, the defendants were free on bond at all times prior to trial. The defendants' delay in asserting their right to a speedy trial is entitled to strong evidentiary weight in determing whether the defendants were denied their consitututional right to a speedy trial. *Barker v. Wingo, supra.*

Taking all of the factors set out in *Barker v. Wingo, supra,* into account, the defendants were not denied their constitutional right to a speedy trial.

### III.

The district attorney not only prosecuted the Spencers for perjury, but appeared as a material witness in the case for the State. The defendants assert that the dual role played by the district attorney, as witness and prosecutor, is grounds for a new trial. They contend that his testimony concerning his

investigation of the shooting incident and his opinion that the facts were not as the Spencers claimed was, in all probability, given undue weight by the jury.

In *Kurtz v. People,* 177 Colo. 306, 494 P.2d 97 (1972), this Court recognized that a material witness should not also function as an officer of the court. The conduct complained of in *Kurtz* involved the testimony of a sheriff who daily called the court to order and who had selected a few prospective jurors on open venire. In *Kurtz,* the testimony was not held to constitute prejudicial error, since the sheriff had played a subsidiary role in the active conduct of the trial. *Kurtz* indicates that had the sheriff been in charge of the jury or been the guardian of the jury, as in *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), then a new trial would have been granted.

In *Johnston v. Emerson,* 133 Colo. 343, 296 P.2d 229 (1956), a case involving the propriety of a plaintiff's attorney appearing as a material witness for his client, the Court took the same approach. We held that the attorney's testimony did not "seem of sufficient consequence to have prevented a fair trial." *Johnston v. Emerson, supra.*

Here, however, the district attorney's testimony is of sufficient consequence to require reversal. He testified that he had told the grand jury that as to the Spencers' version of the shooting incident: "It just couldn't have happened that way." He opined that because of the angle at which the bullets hit the backhoe, they could not have been fired by someone sitting in the cab of a pickup truck as the Spencers had testified. It is inconceivable that the jury did not take into account the fact that the prosecutor was convinced that the Spencers had lied before the grand jury and had thrown "his own weight into the scales against the defendant." *United States v. Pepe,* 247 F.2d 838 (2d Cir. 1957).

The proper course of conduct, when the prosecutor knows in advance, as he did in this case, that he is going to appear as a witness, is to secure a replacement and withdraw as prosecutor. *See People v. Wright,* 182 Colo. 87, 511 P.2d 460. If no replacement can be located, then necessity will

justify a dual appearance by the prosecutor. *See Tomlin v. State,* 81 Nev. 620, 407 P.2d 1020 (1965). The exception does not apply in this case, since the district attorney appointed a special prosecutor for the trial. The special prosecutor, however, was permitted only to examine him when he elected to take the witness stand. All other trial procedures were carried out by the district attorney.

     It is important to note that the district attorney's behavior contravenes Sections 1.1(b) and (c) of the *American Bar Association Standards for Criminal Justice Relating to The Prosecution Function.* These sections provide that:

"(b) The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.

"(c) The duty of the prosecutor is to seek justice, not merely to convict."

As the commentary explains, the fundamental obligation of the prosecutor "is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public." A "vigorous, fair and efficient prosecution system" is a key to achieving justice. *American Bar Association Standards for Criminal Justice Relating to The Prosecution Function,* pp. 44, 45. By both appearing as a witness against the Spencers and at the same time prosecuting the Spencers, the district attorney denied the defendants a fair trial.

Accordingly, the judgment is reversed, and the cause is remanded for a new trial.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES do not participate.