550 P.2d 876 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Merle HAUSCHEL, Defendant-Appellant.
No. 74-553.
Colorado Court of Appeals, Div. I.
November 20, 1975.
Rehearing Denied January 2, 1976.
*877 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., John R. Rodman, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, T. Michael Dutton, Deputy State *878 Public Defender, Denver, for defendant-appellant.
Selected for Official Publication.
STERNBERG, Judge.
Defendant appeals his conviction of first degree criminal trespass (§ 18-4-502, C. R.S.1973), third degree misdemeanor assault (§ 18-3-204, C.R.S.1973), and attempted sexual assault (§ 18-3-407, C.R.S. 1973, and § 18-2-101, C.R.S.1973). These were lesser offenses to more serious charges contained in the information. We affirm the convictions.
Two young women lived together in a small cabin east of Glenwood Springs near Interstate 70. They retired shortly before midnight on the evening of January 23, 1974, one on the floor in a sleeping bag at the foot of a bed in which the other slept. They were awakened in the small hours of the morning by a male intruder. Since the room was illuminated by the glow of two electric heaters and the light of a street lamp coming through a picture window, they were able to see him. While there was some discrepancy in their later descriptions of his clothing, both said the intruder had light brown hair, had a scarf covering the lower part of his face, and wore a jacket and leather or suede gloves. He was armed with a knife.
Upon being awakened, one of the women moved toward the intruder and ordered him to leave. He cut her hand with the knife and instructed her either to "Get back or it will be her throat," or "Get back or it will be your throat." He said things would be "okay" if they did as directed and ordered them to "Get nude." They did not comply and a struggle ensued during which the second woman was cut by the knife on the shoulder and arm and struck in the face. She broke away and ran from the residence to a neighbor's cabin, followed soon by the first woman. Having enlisted the aid of a male neighbor, the women started back toward their cabin, at which time they saw the intruder enter a blue and white pickup truck and drive westerly toward Glenwood Springs.
The women were taken to a hospital for treatment. One required a number of stitches in her shoulder and arm, and the other's hand also required stitches.
At about 3:00 a. m. on the morning in question, a Glenwood Springs police sergeant received a call from his dispatcher informing him of the attack and giving a description of the pickup truck. Observing a vehicle matching the description traveling west on Interstate 70, he followed it for three-quarters of a mile before stopping it and asking for the driver's license and registration. Shortly thereafter, the sergeant was joined by another police officer and both testified at the trial that the driver was, in their opinion, impaired but not under the influence of alcohol. After reporting to the police dispatcher and being told that the sheriff's department did not wish to come to the scene, the officers released the suspect. At the trial, the sergeant identified the defendant as being the driver of the pickup and testified that he had noted that defendant, on the night in question, was wearing a plaid jacket and that he had a black scabbard on his belt.
On the afternoon after the attack the sheriff procured an arrest warrant and, after advising defendant of his rights, took him into custody. Later that day, officers armed with a search warrant returned to defendant's house and seized a knife, several pairs of trousers, a pair of shoes, and one leather glove found in the pickup truck parked beside the door of defendant's home. Significantly, the mate to the leather glove was found near the women's cabin. The district attorney took part in the execution of this search warrant, and it was he who found both a scabbard and knife which were later introduced into evidence.
A photographic lineup was held the day after the incident. On two different occasions one of the women was shown about seven photographs, and during the second of these photographic lineups was unable to choose between two photographs which she picked as resembling the intruder. The other woman was shown about ten photographs *879 and selected one as being the intruder. The photographs which were used in this lineup were available at the preliminary hearing and were viewed by defense counsel at that time. There was no allegation at that hearing that the photographic lineup was unduly suggestive. At the time of trial the photographs had been misplaced or lost and thus were unavailable.
Defendant's theory of the case was that during the night in question his mental and physical capabilities were so impaired by alcohol that he was unable to form the required specific intent to commit the crimes with which he was charged. Defendant testified that he left a bar between 1:30 and 1:45 a. m., that it takes only a few minutes to travel from the bar to his home, but that he did not arrive there until after 3:00 a. m. He made no specific denial that he had committed these acts. His testimony was that he had been drinking so heavily that he could not account for his time between approximately 2:00 and 3:00 a. m., that in the past he had been subject to "blackouts" when drinking, and that he did not believe he had committed the offenses because such conduct would be foreign to him. The jury was instructed on defendant's theory of the case.

I.
Defendant's first contention on appeal is that the court erred in permitting the district attorney to remain in the courtroom and participate in the trial when it was known that he would be called as a witness for the People, and that the court further erred when it permitted the district attorney to testify and did not grant a mistrial at the conclusion of his testimony.
In Colorado, a prosecuting attorney is competent to be a witness for the state, see § 13-90-101, C.R.S.1973, but ordinarily he should withdraw from active participation in a case when he learns he will be a witness. People v. Spencer, 182 Colo. 189, 512 P.2d 260. See Kurtz v. People, 177 Colo. 306, 494 P.2d 97; and ABA, Standards Relating to the Prosecution Function and the Defense Function § 1.1(b).
While the "better practice" is not to permit a material witness to function as an officer of the court, Kurtz v. People, supra, nevertheless, for such conduct to constitute reversible error there must be a showing that the witness-attorney's testimony is of sufficient consequence to have prevented a fair trial. See Johnston v. Emerson, 133 Colo. 343, 296 P.2d 229; and People v. Spencer, supra.
In Spencer, supra, the Supreme Court clarified the particular conduct which is of "sufficient consequence" to prevent a fair trial. There, in a prosecution for perjury before a grand jury, the district attorney not only carried out all trial procedures, but also testified that in reference to defendant's version of a shooting incident he had told the grand jury that "it just couldn't have happened that way." This testimony by the district attorney concerning his belief that the defendants were guilty of perjury, the very charge which he was prosecuting, also carried with it an improper inference that the grand jury agreed with him. The court held that such testimony by the district attorney threw "his own weight into the scales against defendant"; thus the defendants were denied a fair trial.
In the instant case, nearly all of the trial procedures were carried out by a deputy, and, although the district attorney remained in the courtroom and at the prosecution table during the trial, his participation in the trial was limited to taking part in the voir dire of two prospective jurors (one of whom remained on the jury at trial) and direct examination of one and redirect of another of the 37 witnesses called during trial. Also, the district attorney's testimony was limited to describing his discovery of the knife and scabbard during a search of defendant's house.
Defendant's position is that had the district attorney limited his testimony to the fact that he seized the knife and scabbard, *880 there would have been no substantial prejudice to the defendant; however, defendant maintains that since the actual testimony of the district attorney was that the items were found beneath some cushions, such testimony gave rise to the inference that they were deliberately hidden there. Thus, the defendant, while not challenging the accuracy of the testimony, claims that it was beyond the point of a mere reference to mechanically picking up the item, but rather implied guilty knowledge causing prejudice to the defendant.
While the issue presented is a close one, and the district attorney's conduct in risking a reversal by adopting a dual role in the trial can only be characterized as reckless, nevertheless, we decline to extend the doctrine of People v. Spencer, supra, to reverse this conviction. Our decision is based on several considerations. The district attorney's participation in the trial was limited, and pursuant to court order, after he testified he took no further part in the trial. Nor was the nature of the district attorney's testimony here as significant or damning as that in Spencer.
Thus, we hold that this district attorney's indiscretion, under the facts of this case, does not rise to the seriousness of constituting a denial of a fair trial, and that thus the refusal to grant a mistrial after his testimony was not reversible error. See Annot. 54 A.L.R.3rd 100. Also, while it would have been better practice not to have permitted the district attorney to remain at counsel table after he had testified, that imperfection in the trial procedure does not constitute error requiring reversal. See Johnston v. Emerson, supra; Kurtz v. People, supra; and People v. Spencer, supra.

II.
Defendant's next contention of error is predicated on the loss of the pictures that constituted the photographic lineup. While they had been available at the time of the preliminary hearing, the photographs were lost or misplaced after that by either the district attorney's office or the court, and thus were not available at the trial.
Defendant argues that the loss of this evidence was tantamount to suppression by the prosecution, and that thus, he was denied due process of law under the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. There, the Court held:
"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
In Cheatwood v. People, 164 Colo. 334, 435 P.2d 402, our Supreme Court adopted the rationale of Brady, stating that:
"Clearly it is the duty of both the prosecution and the courts to see that no known evidence in the possession of the People which might tend to prove a defendant's innocence is withheld from the defense before or during trial."
In that case, the court found error where the prosecutor did not make available to defense counsel evidence which would have tended to exculpate defendant.
Although in the instant case, there was no suppression of the photographic lineup by the prosecution, but rather an accidental loss, even if we agree with defendant that the effect is the same, defendant's contention that this loss resulted in a denial of due process must fail. It has not been demonstrated that the photographic lineup was "evidence favorable" to defendant or "material to his guilt or punishment," as the test is expressed in Brady, nor "evidence which might tend to prove defendant's innocence" as stated in Cheatwood.
Here, both victims made positive in-court identifications based upon ample opportunity to view their attacker. Indeed, one of the women stated, "I could never forget his face." Moreover, even after he had viewed the photographic lineup, defendant's counsel's only allegation of "suggestiveness" was the inconsequential one that *881 there was a light switch present in the photograph of defendant and in none of the other pictures. Also in this regard, it is noteworthy that there was presented to the jury the fact that one of the women was unable to choose between two photographs in the photographic lineup.
Thus, since the in-court identification by the victims was firm and was based upon a reasonable opportunity to observe, and since there is no serious contention that the missing photographs were so designed that defendant would be unduly suggested to the victims as their assailant, the absence of the photographs at trial was without prejudice to defendant.
Under these circumstances, and in view of the ample and persuasive circumstantial evidence from which the jury could have connected defendant to this crime, the inability to produce the photographic lineup did not result in denial of due process of law. See Simmons v. United States, 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; and Fresquez v. People, 178 Colo. 220, 497 P.2d 1246.

III.
Defendant's third allegation of error concerns several of the jury instructions given by the court and relates to lesser included offenses. The information filed in this case contained seven counts: One of first degree burglary; two of first degree assault; two of attempted rape; one of failure to notify of an accident; and one of driving under the influence. (The last count was dismissed at the request of the prosecution.) The jury found defendant not guilty of all of the charges in the information, but returned guilty verdicts on the lesser charges of first degree criminal trespass, third degree misdemeanor assault, and attempted sexual assault.
Defendant's contentions of error in this regard are first that two instructions were given that did not include third degree trespass as a lesser included offense of first degree burglary. Secondly, he urges that it was error to give two instructions that did not include menacing without a deadly weapon and reckless endangerment, as lesser included offenses of first degree assault.
Even should we conclude that third degree trespass is a lesser included offense of first degree burglary and menacing without a deadly weapon and reckless endangerment are lesser included offenses of first degree assault, the court did not err in not instructing the jury on either of the two lesser offenses. Section 18-1-408(6), C.R. S.1973, provides that:
"The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." (emphasis supplied)
In reference to the first of defendant's contentions above, the intrusion here was clearly into a dwelling; thus there was a rational basis to instruct on first degree criminal trespass or even second degree trespass (trespass to enclosed premises) as lesser included offenses of first degree burglary. This the court did; however, there would be no rational basis to acquit the defendant of these two offenses and convict him of unlawfully entering or remaining upon premises (third degree criminal trespass). Hence, the exclusion of third degree criminal trespass was proper.
Moreover, the jury was fully instructed on first and second degree burglary and first and second degree trespass. The jury, having considered the alternatives, found defendant guilty of first degree criminal trespass, thereby rejecting the lesser offense of second degree criminal trespass. If it had also been given the further alternative of third degree criminal trespass, the resulting verdict undoubtedly would have been the same. See People v. Mullins, Colo., 532 P.2d 733.
Similarly, with regard to defendant's second contention above, the assault was indisputably with a deadly weapon and *882 bodily injuries were clearly inflicted on both victims. Thus, the evidence in this case could not rationally permit an acquittal of the defendant of assault in the first degree and a conviction of either reckless endangerment or menacing without a deadly weapon, and the trial court's refusal to give defendant's tendered instruction as to these two lesser offenses was not error.
Also in this regard, defendant urges that it was error for the court to have given the instructions on second degress burglary and second degree criminal trespass as lesser included offenses of first degree burglary. This allegation of error must fail since defense counsel failed to offer an instruction correcting the alleged error. Indeed, defendant tendered a substantially identical instruction which read:
"The offense of first degree burglary... necessarily includes the lesser offense of second degree burglary, second degree trespass, and third degree trespass."
Matters precipitated by the defendant at trial cannot be grounds for relief on appeal. Fresquez v. People, supra; People v. Shackelford, 182 Colo. 48, 511 P.2d 19.
Finally, in this regard, defendant alleges that the court erred in giving instructions on attempt to commit gross sexual imposition as a lesser included offense of attempt to commit rape. We note that the jury rejected both attempt to commit rape and attempt to commit gross sexual imposition, and found the defendant guilty of the lesser offense of attempt to commit sexual assault. Thus, the defendant was not prejudiced by the error, if any, of including the offense of attempt to commit gross sexual imposition as a lesser included offense of attempt to commit rape. See People v. Mullins, supra.

IV.
The sheriff's response to a question asked him by the prosecutor serves as the basis of defendant's next contention of error. While interrogating the sheriff about the arrest of the defendant, the prosecutor asked:
"At any point in this procedure, did you make any kind of advisement to Mr. Hauschel?"
The sheriff responded:
"Yes, I advised him right there at his home that he did not have to make any statements and that any statements that he did make would be used against him in a court of law and that he had a right to an attorney before any question was asked. He stated to me that he was going to hire an attorney." (emphasis supplied).
Following this answer, defendant moved for a mistrial, arguing that the last sentence of the sheriff's answer indicated a consciousness of guilt on defendant's part and furthermore that the entire answer constituted an unconstitutionally prejudicial comment on defendant's right to have an attorney and his right to remain silent.
While it is undeniably true that the prosecution may not refer to a defendant's exercise of his Fifth Amendment right to remain silent in the face of an accusation, not every such reference mandates automatic reversal. As stated in People v. Key, Colo., 522 P.2d 719; "The relevant inquiry is whether the prosecution `utilized defendant's silence as a means of creating an inference of guilt.'" The Court there went on to state that where references to the silence of a defendant are not intentially designed to provoke adverse inferences of guilt in the minds of the jury, nor so repeated or gross in character as to provoke such inferences of guilt, reversal is not required.
Here, the prosecutor did not seek to elicit this comment from the sheriff nor did he make any further reference to the defendant's rights to remain silent. The question asked was concerned with the procedure utilized by the sheriff during defendant's arrest. It did not refer to the defendant's right to remain silent; the sheriff's answer supplied more details than *883 were required by the question asked. Under these circumstances, we find no abuse of discretion in the trial court's refusal to grant defendant's motion for mistrial.

V.
Defendant next asserts that the court erred in two respects in not granting his motion to suppress all items taken from his residence. First, he argues that several items, including a plaid jacket, should have been suppressed as products of an illegal search, the fruits of which were later used to obtain a search warrant. Second, defendant maintains that a light colored glove, the 1971 pickup truck, and a hunting knife should have been suppressed as fruits of a search warrant which was invalid in that probable cause for its issuance was not present.
With respect to the first part of this contention, the record reveals that the plaid jacket and other items complained of by defendant were viewed, but not seized by, officers during defendant's arrest. Since all of these items were in plain view and seen by officers who had a legal right to be in the position where they observed the evidence, there was no "search" of any kind. See People v. Shriver, Colo., 528 P. 2d 242; and see People v. Boileau, Colo. App., 538 P.2d 484.
Secondly, in this regard, defendant attacks the affidavit which served as the basis for issuance of the search warrant. He alleges that it did not establish probable cause to search the pickup truck because it was technically defective and that thus the items found there should have been suppressed. The affidavit in question explicitly incorporated by reference an earlier affidavit that was used to support issuance of the arrest warrant, and there was no impropriety in the two affidavits not being physically attached.
In Colorado, courts have traditionally followed standards of common sense and reasonableness when reviewing the sufficiency of an affidavit in support of a search warrant. As stated in People v. Ragulsky, Colo., 518 P.2d 286:
"The standard for determining whether a search warrant complies with constitutional requirements is one of practical accuracy rather than technical nicety."
Although in the instant case it is not clear whether the two affidavits were physically attached, the issuing magistrate properly determined that the affidavit in support of the search warrant adequately incorporated the other affidavit, sworn before the same magistrate on the same day, so as to establish probable cause to search the defendant's truck.
We have considered defendant's other contentions of error and find them to be groundless.
Judgment affirmed.
VanCISE, J., concurs.
COYTE, J., dissents.
COYTE, Judge (dissenting).
I respectfully dissent and would order a new trial on the sole ground that the district attorney's conduct in this case was improper.
Knowing in advance that he was to appear as an essential witness for the prosecution, he should have withdrawn totally from the prosecution of the case in favor of a replacement. It is impossible to conceive that the jury, in weighing his testimony, could ignore the prestige of the office of district attorney and his role at trial relating to the discovery and condition of a weapon introduced as an exhibit at the trial. Where the evidence is conflicting and the case hinges on identification of the alleged assailant, testimony by the district attorney while he serves in his official capacity, throws "his own weight into the scales against the defendant." People v. Spencer, 182 Colo. 189, 512 P.2d 260, citing United States v. Pepe, 247 F.2d 838 (2d Cir. 1957). See ABA, Standards Relating to the Prosecution Function § 5.8(b) (1971).