## No. 27614

### The People of the State of Colorado v. Darrell Vernon Pickett

(571 P.2d 1078)

Decided October 24, 1977.

180

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Felipe V. Ponce, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Gene Beville, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant was convicted by a jury in Arapahoe County District Court of felony menacing (section 18-3-206, C.R.S. 1973), possession of an illegal weapon (section 18-12-102, C.R.S. 1973), and carrying a concealed weapon (section 18-12-105, C.R.S. 1973). We affirm.

The charges stemmed from an incident which occurred on May 2, 1975, at an Aurora laundromat. The People's evidence showed that Janet Little and her three-year-old daughter had entered the laundromat at approximately 8:00 p.m. About twenty minutes later, a man identified as the defendant, came in. While Mrs. Little did her laundry, the man watched her, followed her, and at one point stood only a few inches behind her. At about 9:00 p.m., a couple, Kalman and Pamela Fekete, entered the laundromat. Mrs. Little told Mrs. Fekete that she was in fear of the man and asked them to remain in the laundromat until she finished her laundry. They sat down on the same bench where the man was seated. Pamela Fekete carefully observed him in the well-lit building.

After Mrs. Little finished her laundry, she began loading it in her car, which was parked behind the laundromat. Each time that she walked out the rear door of the building, the man would go out the front. On the fourth and final trip out, as she was leaning into her car unloading the laundry, she was bumped from behind and fell forward into the car. She turned over and saw her attacker. He reached into his pocket, pulled out a knife, and clicked it open. She screamed and kicked until he ran off. She observed his face from three to four feet away and recognized him as the man in the laundromat. She later testified that "I'll never forget the face — it's implanted in my mind."

A composite drawing of the suspect with the description of the suspected vehicle, together with details of the offense, were circulated. On May 30, 1975, an officer noticed at the same laundromat a truck similar to that driven from the scene by the attacker. The officer observed the defendant inside the laundromat and noted that he matched the suspect's description. When defendant left, the officer arrested him, patted him down, and found two knives.

Both the victim of the attack and Pamela Fekete picked the defendant out of a photographic array. They were permitted to make in-court

identifications. At trial the defendant presented an alibi defense and disputed the purported identifications.

The defendant urges many grounds for reversal of his conviction. We consider these allegations in order.

I.

■ Defendant belatedly argues that some of the Criminal Code sections he had been convicted of violating are unconstitutionally vague and overbroad. Since the constitutional issues were not presented to the trial court or preserved for appellate review, we do not consider them. First, the defendant did not raise the issue of unconstitutionality in the district court as is required. *People v. Carr*, 185 Colo. 293, 524 P.2d 301; *Valley v. People,* 165 Colo. 555, 441 P.2d 14. Nor did defendant raise it in his motion for a new trial as required by Crim. P. 33(a). Finally, defendant did not even mention the issue in his opening brief to this court. C.A.R. 1(d).

II.

■ The defendant argues that the court erred in denying his motions for judgment of acquittal. He contends that there is insufficient evidence to support the guilty verdicts on any of the charges. The appropriate test is whether the evidence, when viewed in its totality and in the light most supportive of the guilty verdicts, is sufficient to support the conclusion in the minds of reasonable persons that the defendant was guilty beyond a reasonable doubt. *People v. Bueno*, 188 Colo. 396, 534 P.2d 1196; *People v. Bennett*, 183 Colo. 125, 515 P.2d 466.

In particular, defendant argues that, as to Count II, possession of an illegal weapon, there was insufficient evidence that the knife taken from the defendant was a "gravity" knife as defined by section 18-12-101(1)(e), C.R.S. 1973. The knife itself was in evidence and the operation of the knife was demonstrated before the jury, which, under proper instructions, resolved this fact issue adversely to the defendant.

■ Defendant further asserts that the knife as it related to Count III (carrying a concealed weapon), had a blade less than 3 1/2 inches long, as defined by section 18-12-101(1)(f), C.R.S. 1973. The evidence was undisputed that the blade of the knife measured 3 1/2 inches in length from its tip to the point where it was hinged to the knife handle, and that the overall length of the blade was more than 3 1/2 inches. In our view, it was not therefore inappropriate for the trial court to rule as a matter of law that the knife in question was the type defined by the statute.[1]

---

[1] Section 18-12-101(1)(f), C.R.S. 1973, defines knife as follows:
"'Knife' means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, *or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds,* but does not include a hunting or fishing knife carried for sports use. The issue that a knife is a hunting or fishing knife must be raised as an affirmative defense." (Emphasis added.)

The defendant also argues that there was not sufficient evidence that he was in fact the man who accosted and menaced the victim, Janet Little. There was ample evidence of identification in the record, from which the jury could conclude to the contrary.

■ From our review of the record, we find ample evidence to support the jury verdicts and the trial court properly denied defendant's motions for judgment of acquittal.

### III.

Defendant argues that the trial court should have severed the felony menacing count from the other two counts for trial. Crim. P. 14. He notes that the felony menacing occurred on a different day from the knife charges and contends that the introduction at trial of the knife prejudiced him on the felony menacing count.

■ The decision on whether to sever counts is within the sound discretion of the trial court and will only be reversed on appeal for an abuse of discretion. *People v. Walker*, 189 Colo. 545, 542 P.2d 1283; *People v. Maestas*, 183 Colo. 378, 517 P.2d 461. There must be actual prejudice to the defendant and not just differences that are inherent in any trial of different offenses. *See People v. Johnson*, 192 Colo. 483, 560 P.2d 465. The important inquiry is whether the trier of fact will be able to separate the facts and legal theories applicable to each offense. *ABA, Standards Relating to Joinder and Severance* § 2.2(b) at 33 (Commentary).

■ In applying these basic principles, we conclude that the trial judge did not abuse his discretion in denying a severance of offenses. Although the felony menacing occurred on a different day than that of the knife offenses, the knife was seized from the defendant as a result of his arrest for the earlier felony menacing. The knife itself was very similar to the knife described by the victim of the attack. Thus, it was evidence also relevant to the felony menacing charge. *See People v. Penno*, 188 Colo. 307, 534 P.2d 795. In sum, the trial court did not abuse its discretion in denying the motion to sever.

### IV.

Defendant contends that the trial court should have suppressed the knife seized from him, as the fruit of an illegal arrest. This argument has no merit.

■ A warrantless arrest is proper if the police officer has probable cause to believe that an offense has been committed by the person to be arrested. Section 16-3-102, C.R.S. 1973; *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598. Probable cause exists if the facts and circumstances within an officer's knowledge are sufficiently strong to warrant a prudent officer in believing that a crime has been committed by this person. *People v. Nanes*, 174 Colo. 294, 483 P.2d 958.

■ The police officer certainly had probable cause to arrest defendant. The officer had a composite drawing with a full description of the suspect and a description of the suspect's unusual vehicle. He also knew the circumstances of the crime. When driving past the laundromat — at the same time and day of the week as that of the crime — he noticed a truck which did resemble the truck described in the bulletin. On investigating further, he observed defendant in the well-lit laundromat and felt that he matched the suspect's description. Based on these articulable facts and circumstances, the officer had probable cause to arrest defendant. Once he had made a valid arrest, a full search of the defendant was permissible. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427.

## V.

Defendant asserts that prejudicial error occurred when the court denied his motion to suppress in toto in-court identifications.

After a pretrial hearing on defendant's motion, the trial court ruled that it would suppress the in-court identification by Kalman Fekete but would deny the motion to suppress in-court identifications by Janet Little and Pamela Fakete. The defendant argues that both of these identifications are the products of unduly suggestive photographic arrays.

■ If a photographic array is unnecessarily suggestive, the resultant photographic identification is excluded as violative of a defendant's right to due process under the Fourteenth Amendment to the United States Constitution. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The suggestiveness issue is to be decided by the trial court on a case-by-case basis, looking to the totality of the circumstances. *People v. Knapp*, 180 Colo. 280, 505 P.2d 7; *Bravo v. People*, 171 Colo. 418, 467 P.2d 814. Even if a photographic array is unnecessarily suggestive, it will not bar an in-court identification if there is an independent basis to support it. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *see People v. Renfrow*, 193 Colo. 131, 564 P.2d 411; *Glass v. People*, 177 Colo. 267, 493 P.2d 1347.

■ It is clear from the circumstances of the transaction that there was an independent source for both in-court identifications. Janet Little had observed her attacker for almost two hours in the well-lighted laundromat, and at times in very close proximity. She stated at trial that "I'll never forget the face — it's implanted in my mind." Similarly, Pamela Fekete, after having been alerted by Mrs. Little, observed the man for about forty-five minutes. She too made a strong and immediate identification, both in court and when she viewed the photographs.

These factors support the court's ruling that there was an independent source for. the in-court identifications. The fact that the two witnesses' previous physical descriptions of the assailant differed in some respects raised an issue that was properly argued to the jury for its consideration in

weighing the identification testimony. *See People v. Watkins*, 191 Colo. 440, 553 P.2d 819. As in *People v. Hauschel*, 37 Colo. App. 114, 550 P.2d 876, the positive in-court identifications here were firm and based on a reasonable opportunity to observe.

## VI.

Defendant also argues that the photographic array shown to the victim, Janet Little, should not have been admitted as an exhibit for the jury to view. In *People v. Bugarin*, 181 Colo. 57, 507 P.2d 879, we disapproved giving the jury "classic mug shots" with both full face and profile pictures because of the danger of alerting the jury to a defendant's police record. The pictures here were not typical mug shots because the identifying numbers had been removed, the profile views were detached, and the pictures were simply full face photos of men in street clothes. They were similar to those photographs we approved in *People v. Montoya*, 190 Colo. 11, 543 P.2d 514. The photographs were not introduced into evidence on direct examination of Janet Little, but only after extensive defense cross-examination concerning her photographic identification of the defendant. Thus, the photographic array was highly relevant and helpful to the jury in evaluating the identification testimony of this witness.

## VII.

Finally, defendant urges a number of other errors, none of which merit extended discussion. The jury instructions properly stated the applicable law. Allegations of prosecutorial misconduct do not appear to be supported by the record. Defendant's complaint concerning the alleged improper testimony relating to a note and a dummy found in the victim's backyard after the attack on her is without merit; the subject of this testimony was opened by defendant on cross-examination of the victim and the court permitted the People on redirect examination to inquire into these matters in explanation of what had been brought out on cross-examination. Other alleged erroneous rulings do not deserve mention.

The judgment is affirmed.

MR. JUSTICE KELLEY does not participate.