The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Lamar Atu BLACKWELL, Defendant–Appellant.

No. 07CA0819.

Colorado Court of Appeals, Div. IV.

June 10, 2010.

Rehearing Denied July 22, 2010.

member, C.W., if they were "going to do security" and handed him a silver .38 caliber Walther PPK semi-automatic pistol. Defendant told C.W. that he was going to "merc"—meaning kill—the victim and put on a pair of gloves. As the victim and his friend walked toward their car, they were confronted by defendant and C.W. Defendant, armed with a black .40 caliber Taurus handgun, fired approximately seven shots directly at the victim. C.W. fired four rounds, but claimed he only shot into the air. While the two fled the scene, they disposed of their weapons in a trash can and defendant discarded some of his clothing. When they reached defendant's car, defendant drove at a high rate of speed, and a chase ensued. C.W., the passenger, was apprehended when they crashed into a police car. Defendant ran from the car. Police pursued him, and he was arrested.

Defendant was convicted on all counts. This appeal followed.

John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Neff Services, Inc., Lauretta A. Martin Neff, Bayfield, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

In this case of first impression, we enunciate factors courts should consider in determining whether, under the totality of the circumstances, a prosecutor's warnings to a defense witness concerning potential perjury and false reporting charges deprive the defendant of a fair trial.

Defendant, Lamar Atu Blackwell, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder after deliberation, vehicular eluding with injury, and two habitual offender counts. We affirm.

## I. Factual Background

After a nightclub had closed, the victim argued with a female acquaintance and made gang-related statements. Defendant, a member of a rival gang, asked a fellow gang

## II. Evidentiary Issues

Defendant contends that he was deprived of the right to a fair trial because the trial court erroneously excluded important defense evidence. We are not persuaded.

We review a trial court's ruling concerning evidence's admissibility and relevance for abuse of discretion and will not overturn the ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009); *People v. Kyle*, 111 P.3d 491, 496 (Colo.App.2004).

### A. Defense Witness

#### 1. Witness Coercion

Defendant contends he was deprived of due process because the government improperly interfered with a defense witness's choice to testify. We disagree.

Defendant subpoenaed J.N., C.W.'s former cellmate, to testify concerning statements C.W. had allegedly related to him. J.N. had asked to speak with police detectives. At the meeting's outset, he inquired, "What's in it for me?" During an audio-recorded conversation, he claimed that C.W. said, "I'll kill you, I did it once, I'll do it again," while talking in his sleep. When J.N. confronted

him the following morning, C.W. allegedly confessed to killing the victim and said he continued to see the victim's mother's eyes. According to J.N., C.W. revealed that he was blaming a codefendant for the murder in exchange for a plea bargain. J.N.'s account contained numerous inaccuracies, including:

- C.W. had been in jail for murder, although he had not been charged with murder at that time;
- C.W. had three codefendants; however, the investigation revealed only two suspects;
- Defendant was being held in Adams County, but he was actually in Denver County Jail;
- The victim was shot four times, but there was evidence that he had been shot five times, and that seven shots from the murder weapon had been fired; and
- C.W. had turned in the murder weapon, when the police found the weapons in a trash can.

Although defendant attempted to call J.N. as a witness, he was uncooperative. During an interview, J.N. told defense counsel that he was refusing to testify. When he initially met with the prosecutor, J.N. adamantly repeated that he would not testify at trial and stated that he planned to invoke his Fifth Amendment right to remain silent. He further claimed that he could not remember what he may have told detectives. The prosecutor did not threaten criminal liability at any time during this initial meeting.

At the prosecutor's urging, the court appointed independent counsel to represent J.N. The prosecutor informed J.N.'s counsel that, in his opinion, J.N. had a legitimate Fifth Amendment privilege because he had lied to detectives and could be charged with perjury or false reporting if he testified. Following a meeting with his client, J.N.'s counsel told the court that he believed J.N. had a valid Fifth Amendment privilege and had advised his client not to testify. The defense called J.N. as a witness, but he invoked the Fifth Amendment and refused to testify.

 The People's intentional, concerted effort to deprive a defendant of exculpatory testimony through witness intimidation may deprive the defendant of a fair trial. *People v. Weddle,* 652 P.2d 1111, 1112 (Colo.App. 1982). To prevail on such a claim, the defendant must show governmental interference with a defense witness's choice to testify by preponderant evidence. *United States v. Vavages,* 151 F.3d 1185, 1188 (9th Cir.1998). Unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying may deprive a criminal defendant of his or her Sixth Amendment right to obtain witnesses. *Id.* at 1189. Comments amounting to a threat beyond what the record indicates is necessary and appropriate suggest the prosecutor sought to coerce a witness into silence. *Id.* at 1190.

 We examine the totality of the circumstances to determine whether substantial governmental interference occurred. *Id.* Among the factors we consider in determining the warnings' coercive impact are (1) the manner in which the prosecutor raises the issue, including the warnings' extent and timing, the language employed, and whether the prosecutor communicated directly with the witness or through an attorney; (2) the prosecutor's basis in the record for believing the witness might lie; (3) the warnings' effect on the witness's willingness to testify; (4) whether the court attempted to remedy any misconduct; and (5) whether the prosecutor capitalized on the witness's absence by directing the jury's attention to it during closing arguments. *See Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam) (judge's threatening comments "effectively drove the witness off the stand"); *United States v. Golding,* 168 F.3d 700 (4th Cir.1999) (prosecutor extensively argued that witness's absence indicated falsity of defendant's story); *Vavages,* 151 F.3d 1185; *United States v. Simmons,* 699 F.2d 1250 (D.C.Cir.1983) (prosecutor held private meeting with witness); *United States v. MacCloskey,* 682 F.2d 468, 479 (4th Cir.1982) (prosecutor's "eleventh hour" call to defense witness's attorney reminding him that witness could be reindicted); *United States v. Smith,* 478 F.2d 976, 979 (D.C.Cir.1973) (threat to prosecute defense witness for multiple offenses was calculated to transform

him from willing witness into one who refused to testify); *People v. Harley,* 49 Mich. App. 729, 212 N.W.2d 810 (1973) (judge told witness she need not withhold pertinent information); *People v. Shapiro,* 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980) (repeated warnings).

■ Defendant relies primarily on *United States v. Vavages,* 151 F.3d 1185. In that case, the Ninth Circuit Court of Appeals reversed the defendant's conviction because the prosecutor coerced the defendant's alibi witness into refusing to testify. *Id.* at 1188. The prosecutor warned the witness's attorney that he did not believe the witness and he could bring perjury charges if she testified falsely, and he threatened to withdraw her plea agreement in her criminal case. *Id.* The witness's attorney advised her to invoke her Fifth Amendment privilege against self-incrimination to avoid perjury prosecution, and she did not testify at trial. *Id.* The court noted that although the prosecutor did not berate or badger the witness or her counsel, there was little record support for the prosecutor's belief that the witness was lying. *Id.* at 1190. The court reasoned that the prosecutor's threat to withdraw the witness's plea agreement in her criminal case was especially intimidating. *Id.* at 1191. It was further troubled by the prosecutor's emphasis during his closing argument on the defendant's reliance on his children to support his alibi defense and failure to call an adult witness to corroborate their testimony. *Id.*

■ However, *Vavages* is distinguishable from this case. In *Vavages,* the court was particularly troubled by the prosecutor's threat to withdraw the witness's plea agreement in her criminal case. *Id.* Here, the prosecutor merely advised J.N.'s counsel that he could be prosecuted for perjury. Perjury warnings are not per se improper and may be appropriate. *Id.* at 1189; *United States v. Davis,* 974 F.2d 182, 187 (D.C.Cir.1992) ("there are circumstances when warnings about the possibility and consequences of a perjury charge are warranted—even prudent").

In addition, there is no indication here that the prosecutor raised the issue at an inappropriate time, used inappropriate language, or attempted to badger J.N. into refusing to testify. Moreover, the prosecutor acted properly by requesting that the court appoint independent counsel to advise J.N. *See State v. Graham,* 764 N.W.2d 340 (Minn. 2009) (state acted properly in requesting independent counsel be appointed to advise witness about possible self-incrimination). Significantly, J.N.'s attorney believed J.N. had a legitimate basis for invoking his Fifth Amendment privilege and advised his client not to testify. *United States v. Hooks,* 848 F.2d 785, 802 (7th Cir.1988) (no intimidation when witness acted on own attorney's advice not to testify).

Although the prosecutor and defense counsel both conferred with J.N. before counsel was appointed to represent him, the prosecutor did not warn J.N. about criminal charges before he had counsel and then only warned counsel outside J.N.'s presence. *See Vavages,* 151 F.3d at 1191 (strongest factor in government's favor was that prosecutor only admonished witness's counsel and never directly threatened witness). In fact, J.N. had repeatedly indicated that he would invoke his Fifth Amendment privilege before the prosecutor warned him about potential criminal liability. This was not an instance where the prosecutor issued a plain threat "calculated to transform [an individual] from a willing witness to one who would refuse to testify." *Smith,* 478 F.2d at 979.

Moreover, the inaccuracies in J.N.'s statement and his attempt to procure leniency in his pending felony cases furnished the prosecutor with a legitimate basis for believing that he had fabricated the alleged confession. *See United States v. Williams,* 205 F.3d 23, 30 (2d Cir.2000) (government's threat to prosecute defense witness for perjury if he did not return to stand to recant testimony did not deprive defendant of due process right to present defense where trial court found witness's recantation credible because original testimony went against great deal of evidence in the record).

Although the prosecutor's closing argument referenced the lack of witnesses supporting defendant's theory that he was not

the shooter, the totality of the circumstances indicates that J.N. was not coerced into refusing to testify. Accordingly, we conclude that defendant was not deprived of his ability to present a defense.

### 2. Privilege's Validity

Defendant next contends that the trial court failed to properly inquire into the validity of J.N.'s Fifth Amendment privilege. We are not persuaded.

The Fifth Amendment to the United States Constitution and article II, section 18 of the Colorado Constitution can be invoked by anyone whose statements or answers might incriminate that person by admitting the commission of illegal acts or furnishing a chain in the link of evidence needed to prosecute him or her for a crime. *People v. Razatos*, 699 P.2d 970, 976 (Colo. 1985). The burden lies with the person asserting the right to remain silent to establish that the privilege is properly invoked. *Id.*

Defendant argues that the trial court should have inquired further when J.N. invoked the Fifth Amendment because his invocation required the court to balance the witness's right to remain silent against defendant's Sixth Amendment right to present a defense. The court was under no such obligation. *Id.* (when an individual invokes the privilege, the court must either accept the assertion or inquire further to determine if there is a real self-incrimination danger). Before a court can compel a response or punish a witness for refusing to testify, it must be *"perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate. *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)) (emphasis and brackets in original). Whether the privilege is properly invoked rests with the trial court. *Tipton v. City of Lakewood*, 198 Colo. 18, 22, 595 P.2d 689, 692 (1979). Here, the prosecutor stated that he believed J.N. had a legitimate Fifth Amendment privilege. J.N.'s attorney also advised him not to testify. These circumstances were not sufficient to enable the court to conclude that J.N.'s testimony could not possibly have a tendency to incriminate him. To the contrary, the information known to the court supported the conclusion that J.N.'s testimony might incriminate him, and, thus he could not be forced to testify.

Defendant further maintains that the Fifth Amendment only affords protection for past acts, not those that may be committed in the future. *See People v. Spencer*, 182 Colo. 189, 194, 512 P.2d 260, 262 (1973). According to this argument, J.N. could not invoke the privilege for fear that he would be prosecuted for perjury for testimony about to be given. *See Vavages*, 151 F.3d at 1192 n. 3 ("Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment only where the risk is for perjury in the witness's *past* testimony." (emphasis in original)). However, if J.N. testified that he had lied to police investigators about C.W.'s confession, he could have been prosecuted for false reporting. J.N. also could have been prosecuted for this crime if he gave testimony consistent with his prior statement, and it could be shown to be false. Because J.N.'s answers could have incriminated him, the court did not err in allowing J.N. to invoke the Fifth Amendment's protection. *Razatos*, 699 P.2d at 976.

### B. Audio Recording

Defendant contends the trial court erred in excluding an audio recording of J.N.'s police interview. We disagree.

After J.N. invoked the Fifth Amendment, defendant attempted to introduce the audio recording of J.N.'s interview. The prosecutor objected that the recording was "manifestly incompetent evidence" motivated by J.N.'s attempts to obtain a favorable plea agreement and "demonstrably false." He further maintained that since J.N. had asserted his Fifth Amendment rights, it would be unfair to allow the statements because the witness would not be subject to cross-examination. The court ruled that the recording was inadmissible because it lacked reliability and trustworthiness.

■ Defendant maintains that the recording should have been admitted under CRE 807, which provides in relevant part:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The evidence's proponent must establish circumstantial guarantees of trustworthiness by preponderant evidence. *People v. Preciado-Flores*, 66 P.3d 155, 164 (Colo.App.2002).

The court excluded the evidence under CRE 807, reasoning that it lacked reliability and trustworthiness because:

- Although J.N. had some information about court dates, his account lacked factual support;

- J.N.'s statements that C.W. had nightmares and talked in his sleep on the first night they shared a cell, allegedly saying things like, "Bitch I'll kill you, I did it once, I'll do it again, motherfucker, I'll blow you away," and still saw the victim's mother's eyes were "nonsensical";

- Two other cellmates had not come forward or made any statements;

- J.N. said C.W. used gang names, but he did not recognize defendant's gang name, "Little Corn";

- J.N. claimed C.W. told him there were three others involved in the murder, but the one being held in Adams County shot the victim;

- Although J.N.'s statement that C.W. claimed he shot the victim four times was consistent with evidence that four .38 caliber shell casings were found at the scene, it was inconsistent with C.W. having shot the victim because C.W. was holding the silver .38 caliber weapon, not the black .40 caliber murder weapon;

- It was unlikely that the perpetrators would have seen how many times they hit the victim;

- No other corroborating facts indicated that C.W. told J.N. he committed the murder; and

- J.N. asked, "What's in this for me?" before beginning the interview, which led the court to conclude that his account was an attempt to bargain for leniency.

Defendant contends that the court erred in considering the evidence at trial when determining that J.N.'s statements lacked trustworthiness and reliability. Specifically, he argues that the court improperly evaluated the taped statements' trustworthiness and reliability using the corroborating evidence. We discern no basis for reversal.

Defendant relies on *Vasquez v. People*, in which the supreme court held that "[c]orroborating evidence is not an appropriate 'circumstantial guarantee' supporting [out-of-court statements'] reliability." 173 P.3d 1099, 1107 (Colo.2007) (affirming trial court's ruling regarding admissibility although court should not have considered corroborating evidence in evaluating statements' reliability because statements' reliability should be determined by the circumstances existing when statements were made). *Vasquez* is distinguishable because there the trial court considered corroborating evidence to support the statements' admission. Here, the court relied on contrary trial evidence to exclude the recording for lack of reliability.

■ Assuming without deciding that the court should have evaluated J.N.'s statements' reliability at the time they were made instead of considering the evidence presented at trial, the court did not abuse its discretion in excluding the recording. The court found numerous reasons why the evidence lacked sufficient indicia of reliability and trustworthiness, including:

- J.N. appeared to make the statements to obtain leniency;

- The description of C.W. talking in his sleep was not believable;

- His account lacked specificity;

- J.N.'s description lacked any factual support;

- J.N. did not recognize defendant's gang name; and
- None of J.N.'s and C.W.'s other cellmates came forward.

Because the court's ruling was well supported by the existing circumstances, we conclude it did not abuse its discretion in excluding the recording.

## C. Second Car

Defendant argues that the trial court erred in excluding evidence that an unidentified witness approached a security guard and reported that a black Taurus with tinted windows and its headlights off sped from the same parking lot as defendant's car after the shooting. Because the witness was unavailable, defendant sought to elicit testimony about the unidentified car through the security guard. The court excluded the evidence because no hearsay exception applied and it raised CRE 403 concerns. Specifically, the court noted the unknown declarant's report lacked corroboration. Although he reported that the car sped off, there was nothing else to indicate that he personally observed the car. The court further found that a car leaving the parking lot was not a startling event. The security guard testified that the declarant was calm, not in a state of excitement, and there was no evidence that the statement was made contemporaneously. On appeal, defendant maintains that the report was admissible as res gestae, as an excited utterance, or under CRE 807. We reject each of these contentions in turn.

### 1. Res Gestae

■■■ "Res gestae is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *People v. Greenlee,* 200 P.3d 363, 368 (Colo.2009); *see People v. Skufca,* 176 P.3d 83, 86 (Colo.2008). Res gestae evidence is linked in time and circumstances to the charged crime, forms an integral and natural part of the crime, or is necessary to complete the crime's story for the jury, *Skufca,* 176 P.3d at 86; *People v. Jimenez,* 217 P.3d 841, 864 (Colo.App.2008); *People v. Asberry,* 172 P.3d 927, 932 (Colo. App.2007), and provides the fact finder with a full and complete understanding of the crime's surrounding events and context. *People v. Quintana,* 882 P.2d 1366, 1373 (Colo. 1994). Res gestae evidence concerns a matter incidental to and explanatory of the charged crime's character and is so closely connected as to constitute a part of the transaction without knowledge of which the main fact might not be properly understood. *People v. Rollins,* 892 P.2d 866, 872–73 (Colo. 1995).

■■■ To be admissible, res gestae evidence must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice. *Quintana,* 882 P.2d at 1374. CRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The determination of relevancy is within the province of the trial court and will not be overturned absent an abuse of discretion." *Quintana,* 882 P.2d at 1374.

Here, the evidence is not res gestae because it was not an integral part of the shooting necessary to complete the crime's story for the jury. *See Skufca,* 176 P.3d at 86.

### 2. Excited Utterance

■ Alternatively, defendant contends that the unnamed declarant's statement was an excited utterance. We disagree.

■ An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). A hearsay statement is admissible as an excited utterance if the proponent shows (1) the occurrence or event was sufficiently startling to render the observer's normal reflective thought processes inoperative; (2) the declarant's statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence supports an inference that the declarant had the opportunity to observe the startling statement.

The security guard who heard the report described the unidentified declarant as "rather calm" and "just kind of casual." There was no evidence about whether he witnessed the shooting. Because defendant failed to show that the declarant witnessed a startling event, was sufficiently startled, or observed the vehicle leaving the parking lot, the court did not err in concluding that the evidence did not qualify as an excited utterance.

### 3. Residual Hearsay

Defendant contends the evidence should have been admitted as residual hearsay. Again, we disagree.

As discussed above, to be admissible under CRE 807, evidence must be material, have indicia of trustworthiness and reliability, and serve the interests of justice.

The court recognized that the evidence was potentially exculpatory, but found that the evidence lacked circumstantial guarantees of trustworthiness. There was no indication that the unnamed declarant observed the Taurus leaving the parking lot, and no other witnesses reported having seen the car. Accordingly, the court did not err in excluding this evidence.

### III. Cumulative Error

Finally, we reject defendant's contention that the asserted errors' cumulative effect deprived him of a fair trial.

Cumulative error applies only if the trial court committed numerous errors; defendant's mere assertions of error are insufficient to warrant reversal. *People v. Rivas,* 77 P.3d 882, 893 (Colo.App.2003). For the reasons discussed above, we discern no error. Therefore, reversal is not required.

The judgment is affirmed.

Judge CARPARELLI and Judge STERNBERG * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.