The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 25, 2021

## 2021COA21

**No. 16CA0441, *People v. Forgette* — Criminal Law — Conduct Affecting Juries — Waiver**

In this criminal appeal a division of the court of appeals addresses an issue of juror inattentiveness — namely, whether a juror's inattentiveness during the presentation of evidence deprived the defendant of his statutory right to a jury of twelve. The division considers this issue in light of the fact that defense counsel was aware of the juror's inattentiveness but didn't request any remedy. The division concludes that, under the circumstances of the case, the defendant waived his claim to challenge the juror's inattentiveness on appeal. Because the division also rejects the defendant's other contentions, it affirms the defendant's conviction and sentence.

Court of Appeals No. 16CA0441
City and County of Denver District Court No. 14CR4805
Honorable Kenneth M. Laff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Elliott J. Forgette,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED

Division VI
Opinion by JUDGE WELLING
Fox and Freyre, JJ., concur

Announced February 25, 2021

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Elliott J. Forgette, appeals a district court's judgment of conviction and sentence for burglary.  This appeal presents an issue of juror inattentiveness — namely, whether a juror's inattentiveness during the presentation of evidence deprived Forgette of his statutory right to a jury of twelve.  We consider this issue in light of the fact that defense counsel was aware of the juror's inattentiveness but didn't request any remedy.  We conclude that, under these circumstances, Forgette waived his claim to challenge the juror's inattentiveness on appeal.  Because we also reject his other contentions, we affirm Forgette's conviction and sentence.

## I.     Background

¶ 2     C.B. and N.R.J., along with a friend, returned to their home after dinner to discover a white sedan parked outside of their home and an unfamiliar man standing nearby.  The three approached the man, asking if they could help him find something; he responded that he was looking for a nearby address.  N.R.J. observed the man holding a package belonging to her neighbor and asked him if he took the package from her neighbor's porch.  The man didn't answer and instead threw the package toward C.B. and N.R.J.  The

1

man then ran away and drove off in the white sedan.  When C.B. entered his home, he discovered some of his electronics were missing, so he called the police.

¶ 3     Across town, Officer Brandon Zborowski, unaware of the events at C.B. and N.R.J.'s home, stopped Forgette for a traffic violation.  Forgette was uncooperative during the traffic stop and was arrested on that basis.  The police eventually connected Forgette to the burglary of C.B. and N.R.J.'s home, leading to the charges in this case.

¶ 4     A jury convicted Forgette of second degree burglary of a dwelling, and the trial court sentenced him to twelve years in the custody of the Department of Corrections.

## II.     Analysis

¶ 5     Forgette raises three issues on appeal.  First, he contends that we must reverse his conviction because one of the jurors fell asleep during the presentation of evidence, depriving him of his statutory right to a twelve-person jury.  Second, Forgette contends that the trial court committed two evidentiary errors when it admitted (1) photos of him taken while he was in custody and (2) testimony describing his unruly conduct during the traffic stop.  Third, he

2

contends that the trial court erred when it imposed a more severe sentence based on its finding that he was on felony probation at the time of the burglary.

¶ 6        We address, and reject, each contention in turn below.

### A.        Sleeping Juror

#### 1.        Additional Factual Background

¶ 7        On the first day of trial, the jury was selected and two witnesses testified; there were no reports of sleeping jurors that first day.[1]

¶ 8        On the morning of the second day of trial, three witnesses testified.  The second witness was C.B., who testified about his encounter with the man outside his home on the night in question. During cross-examination of C.B., the court asked counsel for both sides to approach the bench to discuss a scheduling matter.  The following exchange occurred at the bench and outside of the hearing of the jury:

> THE COURT: . . . [H]ow long [do] you have to finish this witness[?]

---

[1] On the first day of trial, the trial court dismissed the only alternate juror due to a scheduling conflict for that particular juror. This left the jury without an alternate.

[Defense Counsel K.]: I'm about five to ten minutes away from being done, probably closer to five.

THE COURT: Then we have redirect.

[Prosecutor G.]: [Juror Number Seven] is now asleep, Judge, and has been for about the last five minutes.

THE COURT: Let's take a break.

¶ 9     The court called a brief recess; there was no further discussion of the sleeping juror the remainder of the morning.

¶ 10     That afternoon, three more witnesses testified. N.R.J. was the second witness to testify in the afternoon. At the close of cross-examination of N.R.J., the court called counsel for both sides to the bench to discuss juror questions for the witness. During the bench conference, defense counsel indicated that the sleeping juror from before was, once again, asleep:

THE COURT: All right. Any juror questions for [the witness]? Please send those to my bailiff. If counsel will approach.

(The following proceedings were held at the bench out of the hearing of the jury:)

[Defense Counsel C.]: Juror Number Seven is asleep, or I think next to your front --

[Defense Counsel K.]: We've lost him again.

4

THE COURT: Yes. He does appear to be dozing off. I have been checking periodically, and he had been fine. I also would note that in [sic] the first time this was mentioned, he actually asked a question of that juror [sic] -- I noticed he passed one of the notes. So, I think he is with us sometimes. I've been trying to keep an eye on him, and I certainly have tapped the microphone, which usually works. I noticed as soon as we started to speak after that last break, he was attentive. He does seem to be eyes closed and being on sand at the moment.

[Defense Counsel C.]: I'm just concerned because I don't know if the Court observed how long he's been asleep.

THE COURT: Well, it's probably been 15 minutes since I looked over at him.

[Defense Counsel C.]: Okay.

THE COURT: My law clerk indicates he keeps perking up, but he saw him watching five minutes ago. So, that's as much as we can tell you. We are trying to keep an eye on him.

[Defense Counsel K.]: Can we try to rouse him now?

THE COURT: Well, we might as well do it when we're done with this discussion of jury questions.

[Defense Counsel C.]: Of course.

(The following proceedings were held in open court:)

5

THE COURT: I understand the jury would like to take a break, so why don't we do that now, and then we'll take up these questions. So, if you'll be back at 3:05, we will have a few more questions for you, possibly from the jury, ma'am, before we complete. And you can take a break as well. Please don't have any contact with the jurors. And so, as always, please continue to follow my rules. Have a good break. Ring in about 3:05. Thank you.

¶ 11     The court then released the jurors for a short break before posing the jury's questions.

¶ 12     There were no further reports or discussions of sleeping or inattentive jurors for the remainder of trial.

### 2.     Analysis

#### a.     Any Objection to the Sleeping Juror Isn't Preserved

¶ 13     As a threshold matter, Forgette contends that his objection to the sleeping juror was preserved because it was brought to the court's attention. While we agree that the issue of the sleeping juror was brought to the court's attention, defense counsel never requested a remedy and the trial court wasn't presented with any specific objection to rule on.

¶ 14     Forgette's counsel informed the trial court of the sleeping juror in a bench conference, but he never asked the court to do anything

6

about it.  A statement that a juror was asleep during proceedings, without a request for a remedy or a specific objection, doesn't present the court with anything to rule on and is, therefore, insufficient to preserve the issue.  *People v. Greer*, 262 P.3d 920, 924 (Colo. App. 2011); *cf. People v. Ujaama*, 2012 COA 36, ¶ 37.  Therefore, we conclude that the issue is unpreserved.

¶ 15    Having concluded that the issue wasn't preserved, we must determine whether the issue was waived, and thereby unreviewable, or merely forfeited and reviewable for plain error.  But before we can resolve that issue, we must determine whether the defendant's personal participation in any waiver is necessary or whether counsel can effectuate a waiver.  Because the answer to that question hinges on the nature of the right at stake, we turn there next.

### b.    Nature of the Right at Stake

¶ 16    In Colorado, a criminal defendant charged with a felony has a constitutional right to a twelve-person jury.  *See People v. Rodriguez*, 112 P.3d 693, 699 (Colo. 2005) (interpreting Colo. Const. art. II, § 23).  But a defendant's constitutional rights — even fundamental constitutional rights — may be waived.  *See, e.g.*,

*Stackhouse v. People*, 2015 CO 48, ¶ 8 ("[E]ven fundamental rights can be waived, regardless of whether the deprivation thereof would otherwise constitute structural error."); *see also Richardson v. People*, 2020 CO 46, ¶ 24 ("Constitutional and statutory rights can be waived or forfeited.").

¶ 17     "[I]ntensely personal and fundamental" rights, such as the right to counsel, the right to testify, and the right to a trial by jury, can only be waived through a knowing, voluntary, and intelligent waiver, executed personally by the defendant. *Moore v. People*, 2014 CO 8, ¶ 9; *see also People v. Bergerud*, 223 P.3d 686, 693-94 (Colo. 2010) ("Decisions such as whether to plead guilty, whether to testify, whether to waive a jury trial, or whether to take an appeal are so fundamental to a defense that they cannot be made by defense counsel, but rather must be made by the defendant himself." (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983))). Among those personal rights is the right to trial by jury. *Rice v. People*, 193 Colo. 270, 271, 565 P.2d 940, 941 (1977).

¶ 18     Because the right to a jury trial is a personal right, inaction by counsel alone can't operate as a waiver of a defendant's right to a jury trial. *See id.* But the right implicated wasn't Forgette's right to

8

a jury trial. Indeed, all of the facts necessary to determine Forgette's guilt were determined by the jury, not the court. And Forgette doesn't contend otherwise. Instead, he contends that because one member of the jury was asleep for some portion of the trial, he was deprived of his right to *a jury of twelve.*

¶ 19    There is a distinction between the waiver of the right to a jury trial and the waiver of the right to a jury of twelve. A defendant's waiver of a jury trial is "the defendant's alone and may be made contrary to counsel's advice." Crim. P. 23(a)(5)(II). But the waiver of the right to a jury of twelve may be made by defendant or defense counsel. *See People v. Chavez,* 791 P.2d 1210, 1211 (Colo. App. 1990) (counsel's verbal request for a six-person jury, on the record, was sufficient to waive the statutory right to a twelve-person jury); *cf.* Crim. P. 23(a)(7) (providing that if a juror becomes unavailable during trial and there is no alternate "the defendant and the prosecution . . . may stipulate in writing or on the record in open court, with approval of the court, that the jury shall consist of less than twelve but no fewer than six in felony cases"); *People v. Baird,* 66 P.3d 183, 189-90 (Colo. App. 2002).

¶ 20    Because we conclude that the right at stake was continuing trial with a jury of fewer than twelve — not the right to a trial by jury itself — we reject Forgette's contention that only he could waive the right at stake here.  Instead we conclude that the right to insist on proceeding with a jury of twelve may be waived on behalf of a defendant by counsel.  *See Chavez*, 791 P.2d at 1211 (rejecting the defendant's contention that "the right to a twelve person jury is a fundamental right that cannot be waived by defense counsel" and holding that the requirement of a personal waiver "does not extend to a reduction in the number of jurors").  Accordingly, Forgette's personal participation in the waiver wasn't necessary for it to be effective.

### c.    Forgette, through Counsel, Waived Appellate Review of Any Error Related to the Sleeping Juror

¶ 21    Having concluded that the defendant's personal participation in a waiver isn't required, we must next determine whether defense counsel's statements and conduct constituted waiver or merely forfeiture.

¶ 22    Waiver requires evidence of an "intentional relinquishment of a known right or privilege."  *Phillips v. People,* 2019 CO 72, ¶ 16

(quoting *People v. Rediger*, 2018 CO 32, ¶ 39).  Waiver may be either express or implied.  *See Rediger*, ¶ 42.  But we "do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver."  *Id.* at ¶ 39 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)).  The failure to timely assert a right, without a showing of intentional relinquishment, constitutes forfeiture, not waiver.  *Id.* at ¶ 40.  Importantly, the waiver of a right extinguishes review on appeal but forfeiture allows for review under the plain error standard.  *Id.* at ¶ 35.

¶ 23     Over the last several years, our supreme court has provided considerable guidance regarding the often fuzzy line between waiver and forfeiture.  *See Phillips*, 2019 CO 72; *Cardman v. People*, 2019 CO 73; *Rediger*, 2018 CO 32; *People v. Smith*, 2018 CO 33.  Certainly, the bar for finding waiver is high, but it's not insurmountable.  *See Stackhouse*, ¶¶ 5, 8, 10 (finding waiver of an improper courtroom closure).

¶ 24     We begin our analysis by reviewing the claims of error advanced in each of the four most recent supreme court cases on the subject.  In *Rediger*, the defendant asserted that a discrepancy

11

between his charge and the jury instructions resulted in a constructive amendment of the charging document. *Rediger*, ¶¶ 8-11. At the close of evidence, defense counsel informed the court that he was "satisfied" with the prosecution's proposed jury instructions, though they tracked the incorrect subsection of the statute. *Id.* On appeal, the People argued that Rediger's claim was waived. *Id.* at ¶ 32. The supreme court concluded that "neglect, not intent, explains Rediger's lack of an objection to the constructive amendment" because the record showed that neither the defendant nor his counsel knew of the discrepancy. *Id.* at ¶¶ 42, 44. This, the supreme court concluded, was forfeiture, not waiver. *Id.* at ¶ 47.

¶ 25 In *Smith*, the defendant asserted on appeal that a discrepancy between his charge and the jury instructions created an improper variance that resulted in a non-unanimous verdict. *Smith*, ¶ 10. When asked by the court during trial, however, defense counsel indicated that the relevant proposed jury instruction was "acceptable." *Id.* at ¶ 6. On appeal, the People argued that Smith's claim was waived. *Id.* at ¶ 11. The supreme court concluded that, by stating that the instructions generally were "acceptable" to him,

Smith didn't intend to relinquish a variance claim; therefore, he didn't waive the claim he was advancing on appeal.  *Id.* at ¶ 22.

¶ 26    In *Phillips*, the defendant sought to suppress statements he made while in custody and a gun recovered from his car.  *Phillips*, ¶ 6.  But the trial court admitted both the statements and the gun.  *Id.*  On appeal, Phillips challenged the evidence on different grounds than those raised in his suppression motion, and a division of this court concluded that those new contentions were waived.  *Id.* at ¶ 8.  The supreme court reversed, concluding that the contentions weren't waived but merely forfeited as the record was "barren of any indication that defense counsel considered raising the unpreserved contentions before the trial court but then, for a strategic or any other reason, discarded the idea."  *Id.* at ¶ 22.

¶ 27    In *Cardman*, the defendant moved to suppress his pretrial confession, but the trial court denied his motion.  *Cardman*, ¶ 6.  On appeal, Cardman raised a voluntariness claim that he hadn't advanced in his suppression motion, and a division of this court concluded the claim was waived.  *Id.* at ¶ 7.  The supreme court disagreed, concluding that there wasn't evidence that defense counsel "intended to relinquish Cardman's right to challenge the

13

admissibility of the confession, including on voluntariness grounds." *Id.* at ¶ 11. In so concluding, the supreme court also reasoned that defense counsel couldn't have gained a strategic advantage by refraining from raising an argument to suppress damaging evidence. *Id.*

¶ 28 The errors advanced on appeal in *Rediger, Smith, Phillips,* and *Cardman* — and found not to have been waived — have two key characteristics in common: (1) there is no indication in the record of any of the four cases that counsel was actually aware at trial of the specific error complained of on appeal, *Rediger*, ¶ 43 ("Nor . . . do we perceive any evidence that Rediger knew of the discrepancy between the People's tendered jury instructions and the charging document."); *Smith*, ¶ 18; *Phillips*, ¶ 22; *Cardman*, ¶ 18; and (2) there was no conceivable strategic basis for not asserting the error at trial, *Phillips*, ¶ 28 ("[W]e are hard pressed to think of strategic reasons for failing to raise Phillips's unpreserved claims in the trial court."); *Cardman*, ¶ 11 ("Given that Cardman's counsel clearly (and understandably) wanted the confession excluded from the trial, what benefit could he have obtained from his failure to

present an *additional* ground to contest its admissibility? None comes to mind."); *Rediger*, ¶ 42; *Smith*, ¶¶ 17–18.

¶ 29    But the record here is more akin to that of *Stackhouse*[2] rather than the quartet of cases discussed above. In *Stackhouse*, the supreme court concluded that defense counsel waived the right to object to a courtroom closure after counsel became aware of the closure but chose not to object to it. *Stackhouse*, ¶ 2. The supreme court reasoned that "[a]llowing a defense attorney who stands silent during a known closure to then seek invalidation of an adverse verdict on that basis would encourage gamesmanship, and any 'new trial would be a "windfall" for the defendant . . . .'" *Id.* at ¶ 16 (citation omitted).

¶ 30    *Stackhouse* is more apposite than the four more recent cases for two independent reasons. First, like the courtroom closure in *Stackhouse*, Forgette's defense counsel was aware that a juror was asleep during the presentation of evidence but chose to remain mute regarding a remedy. The juror's closed eyes in this case were

---

[2] In *Phillips v. People*, 2019 CO 72, ¶¶ 26-29, the supreme court expressly confirmed the continuing viability of the waiver analysis it undertook in *Stackhouse*.

as apparent to defense counsel as the closed doors of the courtroom in *Stackhouse.* Indeed, at least with respect to counsel's awareness of the error at trial, the case for waiver is more compelling here than in *Stackhouse.* In *Stackhouse*, the supreme court *inferred* counsel's awareness of the supposedly improper courtroom closure from counsel's presence in the courtroom during the closure. *Id.* at ¶ 4. Here no inference was necessary, as it was defense counsel who brought the fact a juror appeared to be sleeping to the court's attention.

¶ 31 Second, there are conceivable strategic reasons for defense counsel not to have requested relief. As the supreme court recognized in *Stackhouse*, the strategic decision was "particularly apparent in the context of Stackhouse's jury selection for his trial on charges of sexual assault on a minor." *Id.* at ¶ 15. There, defense counsel may have favored closure to allow jurors to be candid, to avoid jurors intermingling with the victim's family, or to avoid prejudicing the jury with pretrial media. *Id.*; *see also Phillips*, ¶ 22 (discussing the basis for inferring a waiver when defense counsel fails to object to a courtroom closure). Similarly, Forgette's counsel may have determined that the sleeping juror was favorable

to the defense or that his effective absence from hearing eyewitness cross-examination was beneficial. *See Richardson*, ¶ 26 n.2 (noting in finding waiver of a juror challenge that "[d]efense counsel could have had sound strategic reasons for th[e] decision" not to object to the juror). This potential strategic rationale stands in stark contrast to *Rediger*, *Smith*, *Phillips*, and *Cardman*, where such a conceivable rationale was wholly absent.

¶ 32 Because strategic motivation may keep counsel from objecting to a sleeping juror and such decisions shouldn't permit "an appellate parachute to non-objecting defense counsel" in the outcome of a conviction, *Stackhouse*, ¶ 16, we conclude that counsel's failure to request relief for the known defect of a sleeping juror constitutes waiver.

¶ 33 Because we conclude that Forgette waived his right to appellate review of this issue, we won't consider the merits of his contention. *See, e.g., Richardson*, ¶ 24 ("[W]aiver extinguishes error and therefore any appellate review.").

## B.    Evidentiary Claims

¶ 34 Next Forgette contends that the trial court's two evidentiary errors warrant reversal. First, he contends that the trial court

abused its discretion under CRE 403 by admitting three photos of him taken while he was in custody. Second, he contends the court abused its discretion when it allowed an officer to testify regarding his behavior during the traffic stop that precipitated his arrest. Forgette also contends that, if the errors don't warrant reversal on their own, then the errors cumulatively warrant reversal. We aren't persuaded that the court erred.

### 1. Photos

#### a. Additional Factual Background

¶ 35 Forgette's first contention relates to a series of five photos that were introduced as evidence to aid in his identification. These photos were Exhibits 19 through 23. Specifically, Forgette contends that, while Exhibits 19 and 20 were properly admitted, Exhibits 21, 22, and 23 shouldn't have been admitted.

¶ 36 During a pre-trial hearing, the prosecutor said that Forgette's appearance had changed significantly since the time of the burglary. Concerned about whether the eyewitnesses would be able to identify Forgette in court, the prosecutor said that she intended to introduce photos of Forgette to show how his appearance had changed over time if witnesses had difficulty identifying him.

18

¶ 37    The photos at issue were taken several months apart from one another and provided a visual timeline of Forgette's hair styles and weight gain since the first photo of him was taken on the night of the incident — later admitted as Exhibit 19 and shown below. Defense counsel had no objection to the admission of Exhibit 19 but said that Forgette wouldn't stipulate that the person pictured in Exhibit 19 was him.



Exhibit 19, taken August 10, 2014

¶ 38    Because whether Forgette was the person depicted in Exhibit 19 was going to be a contested issue at trial, the prosecution needed to connect Exhibit 19 to Forgette — as he appeared at trial. To meet this burden, the prosecutor said that he

19

intended to introduce four additional photographs of Forgette, taken since the August 10, 2014, arrest, for identification purposes. In support of his argument in favor of introducing these additional photos, the prosecutor said,

> And I think when ID is at such an issue, we have a need to provide as much information as we can regarding what the defendant's appearance is and was, and those kind of things. As you know, he sits here not only with no facial hair, but as I've already made a record, with his hair slicked back. And the way he's even wearing his hair, his hair almost has a different color to it.

¶ 39     The first photo the prosecution requested to introduce was Exhibit 20, shown below, a booking photo of Forgette taken a few days after his arrest. Forgette's counsel didn't object to the introduction of this photo.



Exhibit 20, taken August 16, 2014

¶ 40    The photos in Exhibits 21, 22, and 23 were taken while Forgette was in custody for unrelated reasons.  In these photos, like in Exhibit 20, Forgette is wearing jail-issued clothing.  Unlike Exhibit 20, however, Forgette's attorney objected to the introduction of these three photos, arguing that the photos implied criminality by providing a repeated visual of Forgette in jail-issued clothing (despite not objecting to Exhibit 20 — a photo depicting Forgette in jail-issued clothing).  Forgette's counsel argued that this repeated visual was unduly prejudicial, and suggested that, instead, the People should introduce a government-issued photo such as a driver's license photo from the Division of Motor Vehicles.  Or, in the alternative, defense counsel suggested that the court shouldn't admit all three photos and instead choose only one or two to reduce the cumulative impact of their collective prejudice.

¶ 41    Based on Forgette's attorney's concerns, the photos in Exhibits 20, 21, 22, and 23 were eventually cropped and the jail-issued clothing visually removed using gray blocks over the portion of each photo where his clothing was visible.  The court ruled that it would permit the People to introduce the cropped photos at trial.

Below are Exhibits 21, 22, and 23 (as introduced and admitted at trial):



Exhibit 21, taken June 2, 2015



Exhibit 22, taken July 1, 2015



Exhibit 23, taken September 21, 2015

¶ 42    In ruling to admit the photos, the trial court said,

> I mean, if there was a stipulation that [Exhibit]
> 19 was the person in the courtroom, we
> wouldn't need this, but the People do have a
> burden to prove these charges beyond a
> reasonable doubt.  They're entitled to present
> all the evidence of identity they have that's not
> unduly prejudicial.  These [cropped photos] do
> not show a jail uniform, and therefore I don't
> think they're unduly prejudicial.  This fixes the
> jail issue.

The court also said,

> If you were willing to stipulate that [Exhibit] 19
> was this Mr. Forgette, I wouldn't have this
> issue.  You don't have to, but that means that
> you have placed identity at issue, and the
> People have the burden to prove that beyond a
> reasonable doubt, and so they're entitled to
> show photos . . . .  ID is an issue, and the
> People can't be restricted from putting in

23

evidence that doesn't have another prejudicial taint. And so I mean, these are certainly probative, and they're not unfairly prejudicial. They establish what the People are entitled to show, that the person in these photos, which more closely resembles the defendant as he sits here today, is the defendant. That's their burden, and they have to be allowed to attempt to carry it with relevant and admissible evidence.

b. Standard of Review and Legal Principles

¶ 43 A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009). A trial court abuses its discretion when its decision was "manifestly arbitrary, unreasonable, or unfair," *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002), or it misapplied the law, *People v. Williams*, 2019 COA 32, ¶ 21. In assessing whether a trial court's decision was manifestly arbitrary, unreasonable, or unfair, we ask not if we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options. *See People v. Rhea*, 2014 COA 60, ¶ 58.

¶ 44 Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.

24

CRE 401. But relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs the legitimate probative value of the evidence. CRE 403. Evidence is unfairly prejudicial only if it has an undue tendency to suggest a decision on an improper basis. *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002). In reviewing the trial court's determination, we assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be expected. *People v. Webster*, 987 P.2d 836, 840 (Colo. App. 1998).

c.     Analysis

¶ 45    The trial court didn't abuse its discretion by admitting Exhibits 21, 22, and 23 for two reasons.

¶ 46    First, the photos were substantially probative of identity, a hotly contested issue at trial. None of the eyewitnesses gave a strong positive in-court identification; instead, they said that Forgette, as he appeared at trial, looked different from the man who appeared at their home. For example, N.R.J. testified as follows:

> [Prosecutor]: Okay. [N.R.J.], I'm going to ask you do you see the individual that you encountered on August 10th, 2014, in the courtroom today?

[N.R.J.]:  I believe it's the defendant.  He looks like he's gained a lot of weight, not nearly as skinny, but --

. . . .

[Prosecutor]: You say you believe it's him, and he's gained a little bit of weight.  Is there anything else about him that you notice is different?

[N.R.J.]: Longer hair, no facial hair.

¶ 47     Similarly, C.B. testified that he believed the person in Exhibit 19 was the person he encountered at his home on the night of the burglary.  And while he believed that Forgette, sitting in court, was the same person he saw on that night, he said that Forgette looked different at trial than he did on the night in question.  The prosecutor correctly anticipated that the issue of identification might be difficult based on Forgette's change in appearance.  And the disputed photographs — Exhibits 21, 22, and 23 — were probative of the contested issue of who was depicted in Exhibit 19. *See People v. Thatcher*, 638 P.2d 760, 768 (Colo. 1981) (a defendant's mug shot is especially relevant to the defendant's identification where the defendant's appearance has changed between the time of the alleged crime and trial), *superseded by rule on other grounds as stated in People v. Dist. Ct.*, 790 P.2d 332 (Colo.

26

1990); *People v. Bozeman*, 624 P.2d 916, 920 (Colo. App. 1980) (introduction of altered mug shots wasn't an abuse of discretion because they were introduced for the purpose of identification in court).

¶ 48    Second, the photos weren't unduly prejudicial. While reference to the existence of booking photos is generally considered prejudicial, it isn't unduly prejudicial where the effect is mitigated. *People v. Pickett*, 194 Colo. 178, 185, 571 P.2d 1078, 1083 (1977) (holding that the introduction of mug shots wasn't prejudicial because identifying numbers had been removed and the pictures were full-face photos, in street clothes); *see also People v. Montoya*, 190 Colo. 11, 15, 543 P.2d 514, 517 (1975) (holding that the introduction of photographs wasn't prejudicial where the photos were simple, without any police identification numbers or other indicators that they were taken while defendant was in custody); *cf. People v. Borrego*, 668 P.2d 21, 24 (Colo. App. 1983) ("While, generally, reference to the existence of mug shots is considered prejudicial, here the effect was mitigated because the prosecutor referred to the books of mugshots as 'photograph albums.'"). Similar to *Pickett* and *Montoya*, the prejudicial impact of Forgette's

27

custodial status in Exhibits 21, 22, and 23 was mitigated by the digitally imposed gray squares covering his jail-issued clothing. This mitigation effort left only full-face photos for the jury's consideration regarding identification, and, thus, their admission wasn't prejudicial. *Pickett,* 194 Colo. at 185, 571 P.2d at 1083; *Montoya,* 190 Colo. at 15, 543 P.2d at 517.

¶ 49　Accordingly, we conclude that the trial court didn't abuse its discretion by admitting Exhibits 21, 22, and 23. *See Williams,* ¶ 21.

### 2.　Traffic Stop

#### a.　Additional Factual Background

¶ 50　The day of the burglary, Officer Zborowski stopped Forgette for an alleged traffic violation. During trial, the prosecutor called Officer Zborowski to testify about Forgette's unruly behavior during the traffic stop. Officer Zborowski testified that after pulling him over, Forgette got out of the car, walked away from him, and didn't listen to his instructions. Officer Zborowski handcuffed Forgette for disregarding his commands. Officer Zborowski testified that after he handcuffed Forgette, Forgette threw his car keys into his car and kicked his car door shut, locking the keys inside and preventing

Officer Zborowski from entering the vehicle. The stolen items were later found in the car after it was impounded.

¶ 51 The People sought to introduce Officer Zborowski's testimony regarding Forgette's conduct, arguing it was probative of his knowledge of the stolen items in his vehicle. The prosecutor reasoned that because Forgette went to "such great lengths" to prevent Officer Zborowski from accessing his vehicle, the jury could infer that he did so because he must have been hiding stolen items from the burglary. But Forgette argued that he behaved this way during the traffic stop because he had controlled substances and drug paraphernalia in the car that he didn't want the officer to find, not because he was aware there were stolen items in the car.

¶ 52 Forgette contended that the People could have established that Forgette was driving the vehicle during the traffic stop and that the stolen items were found after the vehicle was impounded without introducing the unfairly prejudicial evidence of his behavior during the traffic stop. The trial court rejected this contention.

### b. Legal Principles

¶ 53 Res gestae evidence is "[e]vidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the

criminal episode or transaction with which the defendant is charged." *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994). It is "generally 'linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" *Id.* (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). Res gestae evidence is generally "admissible to provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *Id.*

¶ 54     But, res gestae evidence must still pass the CRE 403 balancing test and is inadmissible if it is irrelevant or creates a danger of unfair prejudice that substantially outweighs its probative value. *People v. Jackson*, 627 P.2d 741, 744 (Colo. 1981). Unfairly prejudicial evidence has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. Herrera*, 2012 COA 13, ¶ 41 (quoting *Masters*, 58 P.3d at 1001).

¶ 55    "[W]hen reviewing a trial court's exercise of discretion in performing the balancing required by CRE 403, an appellate court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

### c.    Analysis

¶ 56    Forgette asserts that the testimony related to his behavior during the traffic stop was inadmissible under CRE 403 because it was substantially more prejudicial than probative. We disagree.

¶ 57    To begin, like evidence of flight, the evidence of Forgette's evasive and obstreperous conduct during a traffic stop that occurred shortly after the burglary — and at a time when the fruits of that burglary were in the vehicle's trunk — is probative of Forgette's consciousness of guilt. *Cf. People v. Eggert*, 923 P.2d 230, 235 (Colo. App. 1995) ("Evidence concerning a defendant's flight and efforts by police to locate and return him or her may be relevant to show consciousness of guilt."). The testimony about Forgette's conduct during the traffic stop was "linked in time and circumstances with the charged crime" and, by shedding light on

31

his consciousness of guilt, "provide[d] the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *Quintana*, 882 P.2d at 1373 (quoting *Williford*, 764 F.2d at 1499). Thus, it was admissible as res gestae evidence.[3]

¶ 58 But "even res gestae evidence is subject to exclusion under CRE 403 if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury." *People v. Gladney*, 250 P.3d 762, 768 (Colo. App. 2010)

---

[3] Members of our supreme court have expressed reservations about "the continued appropriateness of the res gestae doctrine." *Zapata v. People*, 2018 CO 82, ¶ 70 (Hart, J., specially concurring) (joined by Gabriel, J.); *cf. also People v. Rojas*, 2020 COA 61, ¶¶ 54-75 (urging the abandonment of the res gestae doctrine) (Furman, J., dissenting) (*cert. granted* Oct. 6, 2020). Indeed, the continuing viability of the res gestae doctrine in Colorado is in some flux, as the supreme court has recently granted certiorari on the issue of "[w]hether this court should abolish the res gestae doctrine." *Rojas v. People*, (Colo. No. 20SC399, Oct. 6, 2020) (unpublished order); *see also Zapata*, ¶ 70 (Hart, J., specially concurring) (suggesting that, "in an appropriate case, [the supreme] court should consider whether to join other jurisdictions that have abandoned the doctrine"). Our analysis here, however, doesn't hinge on the availability or viability of the res gestae doctrine; indeed, even in the absence of the res gestae doctrine, the evidence of Forgette's conduct during the traffic stop would be relevant under CRE 401. And, as such, the evidence's admission would be subject to and, for the reasons set forth below, would survive a CRE 403 analysis.

(citing *People v. Rollins*, 892 P.2d 866, 873 (Colo. 1995)). Forgette contends that the trial court still should've excluded the evidence under CRE 403 because there was an alternative and highly prejudicial explanation for his conduct. Specifically, he contends that the actual reason he was uncooperative during the traffic stop is that there were controlled substances and drug paraphernalia in the car that he didn't want police to find, and not because there were stolen goods in the trunk.

¶ 59    The fact that there may have been an equally or similarly plausible explanation for Forgette's conduct during the traffic stop — and that providing that alternate reason to the jury could be prejudicial to him — didn't bar the prosecution from presenting the otherwise admissible evidence. To be sure, the People's introduction of Forgette's conduct during the traffic stop as evidence of his consciousness of guilt for the crime charged put Forgette on the horns of a dilemma: providing the jury with an alternative explanation for his obstreperous conduct would disclose uncharged criminal conduct to the jury. But the existence of that dilemma was a problem of his own making. And it surely didn't create unfair prejudice barring the evidence under CRE 403.

¶ 60    Simply put, the fact that there may have been more than one explanation for Forgette's conduct during the traffic stop didn't render the evidence inadmissible under CRE 403.  *See Commonwealth v. Booker*, 436 N.E.2d 160, 163 (Mass. 1982) ("That there may have been other reasons for the flight presents a question for the jury in considering the probability that the defendant fled because of a consciousness of guilt of the crime charged in the indictments and for which he was on trial.").

¶ 61    As the Massachusetts Supreme Court aptly explained in *Booker*,

> [a]lthough the evidence explaining a possible motive for the defendant's flight, other than consciousness of guilt of the crime charged in the instant case, tended possibly to prejudice the defendant by showing that he was involved in other criminal activity, this factor does not render the flight evidence inadmissible. *Evidence that tends to show consciousness of guilt is relevant and is not rendered inadmissible simply because it may indicate that the defendant has committed another offense.*

*Id.* (emphasis added) (citations omitted); *see also State v. McDaniel*, 777 N.W.2d 739, 747 (Minn. 2010) ("The fact that [the defendant] may have had another reason to avoid the police does not alone

render the evidence inadmissible."); *Ricks v. Commonwealth*, 573 S.E.2d 266, 269 (Va. Ct. App. 2002) ("While appellant argues his flight could have been the result of the outstanding warrants or his possession of marijuana, these potential multiple causes for the flight do not obviate the 'consciousness of guilt' nexus with the murder."); *Langhorne v. Commonwealth*, 409 S.E.2d 476, 480 (Va. Ct. App. 1991) (A defendant "cannot avoid the inferences which the fact finder may draw from his actions because other charges were pending against him and he may also have been evading those charges.").

¶ 62  Accordingly, the trial court acted within its discretion when it concluded that Forgette's obstreperous conduct during the traffic stop was relevant to his consciousness of guilt and that such evidence wasn't inadmissible under CRE 403 based on a potentially prejudicial alternate explanation.

### 3.  Cumulative Error

¶ 63  Forgette last contends that even if the alleged evidentiary errors don't warrant reversal separately, they do cumulatively.  But because we conclude that the trial court didn't err, we reject Forgette's cumulative error contention.  *People v. Conyac*, 2014 COA

8M, ¶ 152 ("The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

### C.     Aggravated Sentence

¶ 64     Forgette contends that the trial court erred by aggravating his sentence based on the fact that he was on felony probation at the time of the offense because only a jury may properly find facts that aggravate a sentence.  We disagree.

¶ 65     A defendant who is on felony probation at the time of commission of a crime is subject to sentence enhancement.  § 18-1.3-401(8)(a)(III), C.R.S. 2020.

¶ 66     In general, a sentence may only be aggravated based on facts found by a jury beyond a reasonable doubt.  *See Blakely v. Washington*, 542 U.S. 296, 301 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

¶ 67     A court may, however, aggravate a sentence based on a judge-found fact that a defendant has a prior conviction.  *Lopez v. People*, 113 P.3d 713, 723 (Colo. 2005).  Similarly, a court may aggravate a defendant's sentence based on the judge-found fact that the defendant was on probation at the time of the crime.  *People v. Huber*, 139 P.3d 628, 633-34 (Colo. 2006).

36

¶ 68    Here, the court found that Forgette was on felony probation when he committed the crime in this case. Therefore, the court didn't err by increasing Forgette's sentence based on that fact. *See Mountjoy v. People*, 2018 CO 92M, ¶ 29 ("[T]he presence of one *Blakely*-compliant or *Blakely*-exempt fact renders an aggravated sentence constitutionally sound even if the sentencing judge also considered facts that were not *Blakely*-compliant or *Blakely*-exempt.").

### III.    Conclusion

¶ 69    For the reasons set forth above, we affirm Forgette's conviction and sentence.

JUDGE FOX and JUDGE FREYRE concur.